UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TIMOTHY K. SUTHERLAND,

        Plaintiff,

                                      File No.  1:05-CV-71

v.

                                      HON. ROBERT HOLMES BELL

BENTON CHARTER TOWNSHIP, and
JIMMIE L. COBURN, in his official
capacity, Jointly and Severally,

        Defendants.

_____/


**O P I N I O N**

     This civil rights action, brought pursuant to 42 U.S.C. § 1983, is before the Court on

Defendants' motion for summary judgment.  Plaintiff Timothy K. Sutherland alleges that

Defendants Benton Charter Township (the "Township") and Jimmie L. Coburn, Benton

Township Chief of Police, retaliated against him in a variety of ways after he expressed his

opposition to a Township millage proposal.  Sutherland contends that the retaliatory actions

infringed upon his First Amendment right to free speech.  For the reasons that follow,

Defendants' motion is granted in part and denied in part.

I.

     Plaintiff Timothy K. Sutherland is currently a patrol officer with the Benton Township

police department and has been in this position since 1995.  In addition to his patrol officer

duties, in 1999, Sutherland entered into a contract with the Township to provide a suspect

tracking canine unit for the police department.  Under the agreement, the Township paid the expenses associated with the dog as well as the cost of Sutherland's annual re-certification as a tracking dog handler.  The canine unit allowed Sutherland to obtain additional income through overtime work.

Sutherland's complaint stems from the events leading up to and following a special election held in the Township in September 2002 to consider a millage proposal for additional funding for police and fire services.  Sutherland opposed the millage and discussed his opposition with his co-workers and others.  According to Sutherland, he opposed the millage because he believed that the Township had not used a previous millage in the manner originally promised.  Sutherland Dep. at 67-68.  Prior to the election date, Chief Coburn circulated a petition throughout the police department requesting that the officers sign indicating their support for the millage.  Sutherland refused to sign the petition.  He was the only police officer who did not sign it.  On September 30, 2002, the millage was defeated.

Following the millage defeat, Chief Coburn instructed Sutherland to attend a meeting with Paul Harvey, the Township supervisor.[1]   At the meeting the following exchange occurred:

A      . . . . He (Harvey) said that he had heard that I (Sutherland) had created
        an opposition in the area that I live against the millage, that my area or

---

[1]Defendants dispute Sutherland's recitation of the events of this meeting as well as other evidence offered by Sutherland to support his claim.  Because this Court must view the testimony and evidence in the light most favorable to Plaintiff, the Court will assume that Sutherland's recitation of his conversation with Harvey is accurate.

2

> precinct had . . . the most no votes . . . to the millage and he felt I was
> responsible for it.
>
> Q     What did you say?
> A     I told him that I hadn't been going door to door in opposition of the
>       millage, but if persons asked me about it, I tried to give them as honest
>       answers as I could as to why I didn't support it.
> Q     And how did he respond?
>
>                                                   . . . .
>
> A     He just advised me about being careful about getting into politics and
>       that someday if I wanted to be promoted to sergeant and lieutenant, that
>       I should support the millage if I wanted to do those things.

Sutherland Dep at 74-75.  On October 8, 2002, the seven-member Township board of trustees

met to consider their response to the millage failure.  Township controller Elden Piontek

recommended the following budget cuts: (1) discontinuance of Sutherland's tracking dog

services, (2) discontinuance of the SWAT team, (3) layoffs of three police secretaries and

one police dispatcher, (4) leaving vacant a patrol officer position, and (5) laying off a

garbage collector.  Piontek Aff. ¶¶ 4, 5.  The board unanimously approved each proposal.

Thereafter, Sutherland was notified that the Township was terminating his canine unit

contract.  In November 2002, the Township authorized a second special election to consider

another police services millage.  Sutherland again opposed its passage.  Nevertheless, this

millage was approved on December 21, 2002.  The Township, however, did not reinstate

Sutherland's canine unit contract.

3

In April 2003, Sutherland and Officer William Bradshaw responded to a police dispatch call at the home of Arthur Partee.[2]   While attempting to apprehend Partee, Sutherland and Bradshaw struggled with the suspect. During the struggle, Sutherland applied a vascular neck restraint on Partee. After Partee was in custody, the officers noticed that his breathing was deteriorating.  Despite attempts to revive him, Partee died while in police custody.  As a result of the fatality, Lieutenant Delmar Lange notified both the Berrien County Prosecutor and the Michigan State Police.  He also placed both officers on paid administrative leave pending an internal investigation and psychological evaluation.  While the psychological evaluation was completed within a matter of days of the incident, the police department did not complete an internal investigation after the county prosecutor referred the matter to the state attorney general's office for investigation.

The Attorney General did not complete the investigation until December 2003, ultimately concluding that Partee's death was accidental and that Sutherland and Bradshaw would not face criminal charges.  While the investigation remained open, Sutherland and Bradshaw remained on paid administrative leave.  Following the completion of the investigation, both officers were returned to active duty with no change in position, duties, seniority, pay or benefits.

---

[2]The Court is well acquainted with the underlying facts of the Partee matter having presided over a civil matter stemming from the incident. *See Griffith v. Coburn*, 1:04-CV-728 (W.D. Mich.).

4

During Sutherland's administrative leave, the Township posted a notice at the police department regarding a "Sergeant's Classification Examination."  This notice is the first step in the process of offering a promotion to sergeant.  The examination notice was posted in conformance with the requirements of the Patrol Officer Labor Agreement (the "Labor Agreement").  Ex. M, Def.'s Mot. Summ. J.  Sutherland did not apply for the promotion.

In early 2004, Sutherland also did not receive two other employment positions.  The first was a position on the police department's Special Response Team.  Sergeant Vincent Fetke was responsible for filling two open positions on the team.  Sutherland testified that, when he inquired about the positions, Fetke expressed an interest in having him join the team.  Sutherland Dep. at 49.  Despite Fetke's apparent interest, Sutherland was not selected to join the team.  Sutherland testified that he discussed the decision with Fetke after he was passed over,

> I asked him why he made the choices he had in light of the fact that I was pretty much told I was going to get a position, and his reply was he didn't want to present it to the chief that I wanted the spot, because he didn't feel the chief would want to allow it, and being that the [training] school was coming up quick, he didn't want to miss the opportunity with getting persons through to the school.
>
> . . . .
>
> [Fetke's] feeling was that the chief would not want me to have the position and he didn't want to go through the argument with the chief to try and get me the position.

Sutherland Dep. at 53.

The second position involved Sutherland's request to work part-time with the Saint Joseph Township police department, in addition to his duties with the Benton Charter Township police department. When Sutherland sought permission to seek the part-time position, Chief Coburn initially approved the request. Sutherland Dep. at 37, 39; Coburn Dep. at 12. The following day, however, Coburn changed his mind and would not allow Sutherland to pursue the St. Joseph Township position. Sutherland Dep. at 41; Coburn Dep. at 12. The parties dispute the reason for Coburn's subsequent rejection of Sutherland's request. Sutherland testified that Coburn told him that, although he did not have a problem with Sutherland working part-time, following his initial approval he sought the Township board's approval and they rejected it. Sutherland Dep. 41-42. Coburn testified that after he approved the request, he remembered that he had been involved in a similar situation with a previous police chief, and the chief had a policy forbidding an officer from working for another township's department. Coburn Dep. at 12. After recalling the previous police chief's policy, Coburn decided to abide by it, and denied Sutherland's request. Coburn Dep. at 12-13.

Finally, in 2005, the Township posted another sergeant's examination notice in the police department. Unlike 2003, Sutherland did apply for this position. After completing the multi-stage promotion process, Sutherland received a score of 74.2 out of 100. According to the Labor Agreement, a candidate must score a 75 or above, to be considered

for a promotion.  Because he did not score a 75, he could not be considered for the promotion.

Sutherland filed the present lawsuit alleging that the Township and Chief Coburn retaliated against him for exercising his First Amendment right to free speech regarding the millage.  Sutherland contends that the discontinuance of the canine unit contract, the duration of his paid administrative leave following the Partee incident, his failure to apply for the sergeant position in 2003, the decision to leave him off the Special Response Team, Coburn's refusal to allow him to work part-time with another police department, and his failure to be considered for the sergeant promotion in 2005 were actions taken by Defendants in retaliation for his opposition to the 2002 millage.  Before the Court is Defendants' motion for summary judgment on the § 1983 claim.

## II.

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005); *Layne v. Bank One, Ky, N.A.*, 395 F.3d 271, 275 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in the favor of the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005).

Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the non-moving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Although the facts are viewed in the light most favorable to the non-movant, they may not rest on the mere allegations of his pleadings.  FED. R. CIV. P. 56(e); *Daniel v. Cantrell*, 375 F.3d 377, 381 (6th Cir. 2004).  "A mere scintilla of evidence is insufficient."  *Humenny v. Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004).  Rather, a party with the burden of proof opposing a motion for summary judgment has the burden to come forth with requisite proof to support his legal claim, particularly where he has had an opportunity to conduct discovery.  *See Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir. 2001).

### III.

In order to prove a First Amendment retaliation claim plaintiff must show that: (1) he engaged in constitutionally protected speech; (2) he was subjected to adverse action or was deprived of some benefit; and (3) the protected speech was a substantial or a motivating factor in the adverse action.  *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003) (quoting *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001)).  A public

employee must also show that the speech involved a matter of public interest or concern and that "her interest in addressing these matters of public concern outweighs the interest of her employer 'in promoting the efficiency of the public services it performs through its employees.'" *Id.* (quoting *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)); *see also Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001).

Assuming that a plaintiff can meet the burden of showing that his speech was a motivating factor in the adverse action, the burden of production then shifts to the defendant. *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). If the defendant can show that there were other reasons for the adverse action and that the same adverse action would have resulted even if the plaintiff had not engaged in the protected activity, the defendant is entitled to prevail. *Leary*, 349 F.3d at 898; *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999).

Defendants do not dispute that Sutherland was engaged in constitutionally protected speech or that his speech involved a matter of public concern. They do, however, dispute whether he can show that he was subject to adverse action and that his speech was a motivating factor in the adverse action. As set forth above, Sutherland claims that Defendants took a variety of allegedly retaliatory actions against him. Because Plaintiff has successfully raised genuine issues of material fact on certain adverse actions taken by Defendants, while failing to raise such issues on others, the Court grants in part and denies

9

in part Defendants' motion for summary judgment.  Certain actions alleged by Plaintiff to be retaliatory can be easily resolved on summary judgment and the Court will address these actions first.

A.    *Paid Administrative Leave*

Sutherland contends that the duration of his administrative leave following Partee's death was an adverse action taken in retaliation to his public speech.  To be clear, Sutherland does not dispute that he was properly put on administrative leave following the death, rather he argues that the *amount of time* he remained on leave was a retaliatory adverse action.

To be cognizable under § 1983, an "adverse action must constitute an injury that would likely chill a person of ordinary firmness from engaging in the protected activity." *Hoover v. Radabaugh*, 307 F.3d 460, 466 (6th Cir. 2002).  "To sufficiently allege an adverse employment action, this court has held that the plaintiff must show a 'materially adverse change in the terms of . . . employment, [such as] termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities . . . .'" *Jackson v. City of Columbus*, 194 F.3d 737, 752 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Sutherland and Bradshaw were placed on administrative leave following Arthur Partee's death.  They remained on leave until the Attorney General concluded an investigation.  They were paid while on leave and, after being cleared of wrongdoing, were

reinstated without loss of pay, seniority, duties, or benefits.  The fact that Sutherland was paid during his leave and was restored to his original position undermines his claim.  In *Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000), plaintiff, a police officer, brought a § 1983 claim alleging that the city, police chief, and city manager retaliated against him for making public statements regarding political corruption.  205 F.3d at 152.  Following plaintiff's public statements, he was subjected to an internal investigation, polygraph tests, psychological evaluation, and was placed on paid administrative leave.  Plaintiff filed suit alleging that these actions were taken in retaliation to his protected speech.

The Fifth Circuit held that these actions did not constitute actionable adverse employment actions.  *Id*. at 157.  The court held that the investigation, psychological testing, and polygraph tests were not adverse employment actions.  *Id*. at 158.  Further, the court also held that plaintiff did not suffer an adverse action with respect to administrative leave because he was paid while on leave and was returned to his pre-leave position.  *Id*. (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) (holding that plaintiff did not suffer adverse employment action when promotion was delayed two years in response to her exercise of free speech rights because she eventually received promotion with retroactive pay and seniority).

The finding that paid administrative leave is not an actionable adverse action is consistent with the law of this circuit as well.  In *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004), the court, in a Title VII case, considered whether a federal employee suffered

11

an adverse employment action when she was placed on paid administrative leave pending the resolution of an internal investigation. The court concluded plaintiff's paid administrative leave was not an adverse employment action because she was placed on leave pending the outcome of an investigation and was returned to her position upon conclusion of the investigation. *Peltier*, 388 F.3d at 988 ("We have held that 'a suspension *with* pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action.'") (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 803 (6th Cir. 2004) (emphasis in original)).

In this case, Sutherland was placed on administrative leave pending the completion of an inquiry into a very serious incident, the death of suspect while in his custody. After the investigation was complete, Sutherland was restored to his pre-leave position without a loss in pay, benefits, seniority, or responsibilities. Based upon *Breaux* and *Peltier*, this incident is not cognizable as an "adverse employment action" for purposes of Sutherland's retaliation claim. Accordingly, the paid administrative leave does not support Sutherland's retaliation claim.

Moreover, Sutherland's argument that the duration of the leave was a result of a retaliatory motivation is completely misguided. Absent Sutherland's subjective notion that the duration of the leave was motivated by his protected speech, there is no objective evidence indicating that the amount of time he remained on leave was motivated by his prior speech. Sutherland contends that the retaliatory motive is evidenced by the fact that he was

12

not treated in a similar fashion to other police officers who were subject to investigation, and in some cases, criminal charges after being involved in different incidents. First, Sutherland's reliance on other incidents completely ignores the fact that he was treated in the exact same fashion as Bradshaw, the most similarly situated officer to his situation. Both officers were placed on paid administrative leave following Partee's death. Further, both officers were reinstated, eight months later, following the conclusion of the Attorney General's inquiry. It is difficult to accept Sutherland's argument that the duration of the leave was retaliatory when Bradshaw, who signed the millage petition, also remained on leave for the same amount of time.

Second, none of the officers involved in other incidents cited by Sutherland can be considered "similarly situated" to him. The examples cited either involve far less serious actions than the death of a suspect during a struggle with police or do not contain the same level of factual complexity present in the Partee incident.[3] *See* Sutherland Dep. at 108-13. Moreover, each of these other incidents invariably involved unique factual circumstances, and therefore, the comparison to Sutherland's situation is similar to comparing apples to oranges. Accordingly, Defendants are entitled to summary judgment because Sutherland has not offered any evidence to support his claim that the duration of his administrative leave was motivated by his protected speech.

---

[3]As an example of the factual complexity complicating the investigation of the Partee incident, there were only three witnesses to the altercation, the two police officers and Partee's mother. *See* 1:04-CV-728, Nov. 15, 2005 Opinion (Docket #50).

13

B.    *The 2003 and 2005 Sergeant Promotions*

Sutherland also argues that his failure to apply for the 2003 sergeant promotion as well as his failure to receive a promotion in 2005 were adverse actions in retaliation for his protected speech.

The 2003 sergeant promotion was posted while Sutherland was on administrative leave. The undisputed evidence in the record shows that notice of the promotion was posted in conformance with the Labor Agreement. Exhibit M, Def.'s Br. Summ. J.; Exhibit F, Pl.'s Ans. Interog. No. 6, Def.'s Br. Summ. J. There is also no dispute that the Township did not have a duty to notify Sutherland of the promotion in addition to the posting. Pl.'s Ans. Interog. No. 7. Further, Sutherland testified that he was not aware of any other police officer who received a personal invitation to apply for the promotion. Sutherland Dep. at 104. Sutherland also testified that, while he was on leave, he was not prohibited from coming to the department, and in fact did come to the department on "four or five" occasions. Sutherland Dep. at 103. Finally, Sutherland concedes that he did not apply for the promotion. The Court has not been directed to any authority indicating that a *plaintiff's failure* to apply for a promotion that has been properly posted is an adverse action for purposes of a First Amendment retaliation claim. Further, there is no indication that Defendants' proper posting of the promotion without individually notifying any officer in the department was an adverse action or would have a chilling effect on a person's exercise of free speech rights. *See Hoover*, 307 F.3d at 466 ("adverse action must constitute an injury

14

that would likely chill a person of ordinary firmness from engaging in the protected activity."). Sutherland has failed to allege any material issues of fact that would require submission to the jury. Accordingly, Defendants' motion for summary judgment on Sutherland's claim based upon the 2003 sergeant promotion is granted.

Sutherland also contends that his failure to receive the sergeant promotion offered in 2005 was a retaliatory adverse action. Unlike the 2003 promotion, Sutherland did apply for the 2005 promotion. Upon completing the promotion process, however, Sutherland received a score of 74.2. The Labor Agreement governing the promotion process requires that a candidate score over 75 to be considered for the promotion. Exhibit M, Def.'s Br. Summ. J. The agreement also mandates that only the top three scorers are submitted to the Township. Sutherland was fifth. Even assuming that Sutherland could establish that his protected speech was a motivating factor in his failure to receive the promotion, Defendants are entitled to prevail because they have submitted undisputed evidence that the same decision would have been made even in the absence of the protected speech. *See e.g.*, *Leary*, 349 F.3d at 898; *Jackson*, 168 F.3d at 909. This affirmative defense is based upon the Supreme Court's decision in *Mount Healthy v. Doyle*, 429 U.S. 274 (1974), in which the Court held that after a plaintiff produces sufficient evidence to show that his protected speech was a motivating factor in an adverse action, a defendant can escape liability if it can show that it would have reached the same decision even in the absence of the protected speech. 429 U.S. at 286-87.

15

In this case, Sutherland's eligibility for the promotion was precluded by the fact that he did not attain the required score to be considered for the promotion. Sutherland did not score over 75 and was not among the top three scorers, both prerequisites to consideration for the promotion. *See* Exhibit M, Def.'s Br. Summ. J. Interestingly, Defendants note that even if Chief Coburn had given him a perfect score on his evaluation, Sutherland would still not have been eligible for the promotion because he would not have been within the top three scorers. Exhibit S, Def.'s Br. Summ. J. Sutherland has not offered any evidence disputing Defendants' reason for not considering him for the promotion. Whether he engaged in the protected speech or not, Sutherland's failure to achieve the requisite score precluded him from being promoted. Therefore, Defendants are entitled to summary judgment on the portion of Sutherland's claim addressing the 2005 promotion.

The remaining allegedly retaliatory adverse actions present closer questions than the actions addressed above. After reviewing the record, the Court holds that Sutherland has satisfied his burden on summary judgment by demonstrating that there are genuine issues of material fact which need to be submitted to a jury.

C.   *Discontinuance of the Canine Unit Contract*

Following the special election, the Township voted to terminate Sutherland's canine unit contract, among other budget reduction measures. Sutherland contends that his opposition to the millage was a motivating factor in the Township's decision. Defendants do not dispute that the termination of Sutherland's contract was an adverse action, however, they

16

argue that the Township cannot be held liable because Sutherland cannot show that a majority of the board acted with a retaliatory motive.

A governmental entity, like the Township in this case, can be held liable under § 1983 only if a plaintiff establishes "an unconstitutional action that 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . .'" *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) (quoting *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978)). This case unquestionably concerns an official policy of the Township in the form of a budget ordinance unanimously approved by the board. On its face, the budget ordinance does not evidence any improper motivation, thus, "liability under section 1983 can attach to the passage of a facially benign law only if one peers beneath the textual facade and concludes that the legislative body acted out of a constitutionally impermissible motive." *Scott-Harris v. City of Fall River*, 134 F.3d 427, 436 (1st Cir. 1997), *rev'd on other grounds*, 523 U.S. 44 (1998).

The Township argues that summary judgment is appropriate because Sutherland can only show that a minority of the board acted with an improper retaliatory motivation. The Township contends that it cannot be held liable based upon the improper motivation of a minority of the board members. It reasons that, even if a minority acted with an improper purpose, the ordinance would still have been enacted because the decision was unanimous. Courts are divided between two approaches when faced with the question of whether an unconstitutional motive can be attributed to the decision of a municipal body where there is

17

only evidence that a minority of the decisionmakers acted with an improper motive. *Compare Jeffries v. Harleston*, 52 F.3d 9 (2d Cir. 1995) (holding that defendant university board of trustees could not be held liable under § 1983 where legitimate motive of majority of trustees was a "superceding cause" between tainted motive of two board members and the allegedly retaliatory decision); *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994) (rejecting plaintiffs' § 1983 claim alleging that city council adopted a discriminatory policy where plaintiff adduced evidence that a single city council member on a five-member board had an improper motive) *with Scott-Harris*, 134 F.3d at 438 (assuming, but not deciding, that "in a sufficiently compelling case the requirement that the plaintiff prove bad motive on the part of a majority of the members of the legislative body might be relaxed" upon a showing of (a) bad motive on the part of a significant bloc of legislators and (b) circumstances suggesting probable complicity of others); *Esperanza Peace and Justice Center v. City of San Antonio*, 316 F. Supp. 2d 433, 453 (W.D. Tex. 2001) (adopting *Scott-Harris* approach); *United States v. City of Birmingham*, 538 F. Supp. 819 (E.D. Mich. 1982), *aff'd*, 727 F.2d 560 (6th Cir. 1984) (holding city liable for violations of Fair Housing Act where "racial considerations were a motivating factor among a significant percentage of those responsible for the city's conduct.").  While at first glance it appears that this case squarely presents this issue and requires that the Court adopt one of the conflicting approaches, upon closer inspection the Court finds that this issue is not presented and it is not necessary for the Court to rule upon it.

Despite the Township's allegation, this is not a case in which the improper motivation of a minority is being attributed to the decision of the entire board.  The Township's argument overlooks critical portions of the record indicating that the board as a whole acted with an improper motive.  Sutherland testified that, following the discontinuance of his canine unit contract, he discussed the board's vote with Linda Scarborough, the Township treasurer and a board member.  During this discussion, Scarborough described the board's decision to terminate the contract as, "you gave us a rough time (by opposing the millage), so we're giving you a rough time."  Sutherland Dep. at 73.  During her deposition, Scarborough acknowledged that she discussed the termination of the contract with Sutherland, but denied that she personally acted with an improper motive.  Scarborough Dep. at 38, Exhibit 2, Pl's Res. Br. (Docket #47).  Importantly, however, Scarborough did concede that she may have said that the board was giving Sutherland a "rough time" in response to his opposition to the millage.  *Id*.  At this point in the proceeding, the Court must construe all facts in the light most favorable to the plaintiff.  Consequently, Sutherland and Scarborough's testimony raises a triable issue as to whether the entire board, not simply a few members, acted with an improper motive in terminating Sutherland's canine unit contract.  Based upon Sutherland and Scarborough's testimony, a reasonable jury could conclude that Sutherland's opposition

to the millage was a motivating factor in the decision to discontinue the canine unit contract.[4]
Therefore, summary judgment is denied.

D.   *The Special Response Team and Denial of Part-Time Work*

Sutherland's remaining claims include his failure to be selected for the department's
Special Response Team and Chief Coburn's refusal to allow him to work part-time with the
St. Joseph Township police department in addition to his duties with the Benton Charter
Township police department.

With regard to the Special Response Team, Sutherland contends that he did not
receive a position in retaliation for his protected speech.   Sutherland points to his
conversations with Sergeant Fetke, the officer responsible for filling the open Special
Response Team positions.   After the positions initially opened, Sutherland expressed his
interest and Fetke indicated that he would like to have Sutherland on the team.   Sutherland
Dep. at 49.   Despite Fetke's apparent interest, Sutherland was not selected to join the team.
Following the rejection, Sutherland had another conversation with Fetke in which Fetke
explained that "he didn't feel the chief would want to allow" Sutherland on the Special
Response Team and "he didn't want to go through the argument with the chief to try and get

---

[4]The necessity of a trial is strengthened by the additional evidence directed toward
improper motivation of certain board members. For example, Sutherland's conversation with
Harvey following the special election clearly suggests a retaliatory motive. Sutherland Dep.
at 74-75.   Further, Scarborough testified that Carolyn Philips, the Township clerk, was
adamantly opposed to retaining Sutherland's canine unit because she took his criticism of the
millage personally.  Scarborough Dep. at 38-39.

[Sutherland] the position." Sutherland Dep. at 53. Sutherland also testified that Fetke was very uncomfortable during the conversation. *Id.* at 54.

With regard to Sutherland's request to work part-time with the St. Joseph police department, the parties offer conflicting explanations for the rejection. Both sides agree that Chief Coburn initially approved Sutherland's request, but on the following day refused to allow the additional work. Sutherland testified that after initially receiving approval, Coburn changed his mind because the Township board did not approve of it. Sutherland Dep. at 41. Coburn, on the other hand, testified that after he approved the request he remembered that he had been in a similar situation as a patrol officer and a previous police chief rejected his request to work part-time for another department based upon a policy against such activity. Coburn Dep. at 10-11. After recalling the previous chief's policy, Coburn says that he decided to abide by the policy and denied Sutherland's request. *Id.* at 12.

The evidence regarding both incidents is limited. Nevertheless, taking the evidence in the light most favorable to Sutherland's position it is not unreasonable to infer that the rejection of the request to work part time and the failure to receive the Special Response Team position could conceivably have been motivated by an improper retaliatory motivation. Therefore, it appears necessary to submit both allegedly retaliatory adverse actions to a jury. Accordingly, Defendants' motion for summary judgment is denied.

21

IV.

Defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted on Sutherland's claim to the extent that it alleges that Defendants retaliated against him by placing him on an extended period of administrative leave and by failing to promote him in 2003 and 2005.  Summary judgment is denied on Sutherland's claim that the Township terminated his canine unit contract in retaliation for his protected speech as well as his claim that he did not receive a position with the department's Special Response Team and was not permitted to work part time with another police department in retaliation for his protected speech.

Defendants have also filed a motion in limine seeking to exclude certain evidence relevant to the actions addressed in this opinion.  In accordance with this opinion, Defendants' motion in limine is granted in part and denied in part.  An order will be entered consistent with this opinion.

Date:      April 13, 2006                    /s/ Robert Holmes Bell
                                             ROBERT HOLMES BELL
                                             CHIEF UNITED STATES DISTRICT JUDGE